Robert V. Prongay (SBN 270796)
  *rprongay@glancylaw.com*
Pavithra Rajesh (SBN 323055)
  *prajesh@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Plaintiff Shaji Nelson*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAJI NELSON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MARAVAI LIFESCIENCES HOLDINGS, INC., WILLIAM E. MARTIN, III, and KEVIN HERDE,<br><br>Defendant. | Case No. **'25 CV 0499 AGS AHG**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Shaji Nelson ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, her counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Maravai LifeSciences Holdings, Inc. ("Maravai" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Maravai; and (c) review of other publicly available information concerning Maravai.

## NATURE OF THE ACTION AND OVERVIEW

1.    This is a class action on behalf of persons and entities that purchased or otherwise acquired Maravai securities between August 7, 2024 and February 24, 2025, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.    Maravai is a life sciences company which provides products to enable the development of drug therapies, diagnostics, novel vaccines, and support research on human diseases worldwide.

3.    On February 25, 2025, before the market opened, Maravai announced it was postponing its fiscal 2024 earnings release and would delay filing its annual report on Form 10-K for the fiscal year ended December 31, 2024. The Company had identified an error in revenue recognition that "resulted in approximately $3.9 million in revenue being recorded in the final week of the second quarter of 2024 upon shipment when it should have been recorded in the first week of the third quarter of 2024 upon receipt by the customer." The Company had identified "a material weakness in its internal controls over revenue recognition." Maravai also required additional time to "complete its assessment of a potential non-cash impairment charge related to goodwill associated with its previous acquisition of Alphazyme LLC."

4.      On this news, the Company's share price fell $0.87, or 21.70%, to close at $3.14 per share on February 25, 2025, on unusually heavy trading volume.

5.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors that: (1) Maravai lacked adequate internal controls over financial reporting related to revenue recognition; (2) as a result, the Company inaccurately recognized revenue on certain transactions during fiscal 2024; (3) its goodwill was overstated; ; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this District.

10.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.    Plaintiff Shaji Nelson, as set forth in the accompanying certification, incorporated by reference herein, purchased Maravai securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.    Defendant Maravai is incorporated under the laws of Delaware with its principal executive offices located in San Diego, California. Maravai's common stock trades on the NASDAQ exchange under the symbol "MRVI."

13.    Defendant William E. Martin, III ("Martin") was the Company's Chief Executive Officer ("CEO") at all relevant times.

14.    Defendant Kevin Herde ("Herde") was the Company's Chief Financial Officer ("CFO") at all relevant times.

15.    Defendants Martin and Herde (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being

made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.    Maravai is a life sciences company which provides products to enable the development of drug therapies, diagnostics, novel vaccines, and support research on human diseases worldwide.

### Materially False and Misleading

### Statements Issued During the Class Period

17.    The Class Period begins on August 7, 2024.[1] On that day, the Company issued a press release announcing its financial results for the second quarter of 2024, which stated in relevant part:

**Financial Highlights:**

•*Quarterly revenue of $73.4 million, Net loss of $(14.5) million, and Adjusted EBITDA of $16.9 million;* and

•Reaffirmed revenue guidance for the full year 2024 in the range of $265.0 million to $285.0 million.

\*                        \*                        \*

**Second Quarter 2024 Financial Results**

*Revenue for the second quarter was $73.4 million, representing a 6.5% increase over the same period in the prior year and was driven by the following*:

• Nucleic Acid Production revenue was $58.5 million for the second quarter, representing a 9.8% increase year-over-year. The revenue increase was primarily driven by higher demand for GMP CleanCap analogs, GMP mRNA, and our Glen Research product portfolio.

• Biologics Safety Testing revenue was $14.9 million for the second quarter, representing a 4.7% decrease year-over-year. The revenue decline was primarily due to lower demand trends in China.

Net loss and Adjusted EBITDA (non-GAAP) were $(14.5) million and $16.9 million, respectively, for the second quarter of 2024, compared to

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added.

net loss and Adjusted EBITDA (non-GAAP) of $(11.9) million and $9.1 million, respectively, for the second quarter of 2023.

18.    On August 8, 2024, the Company submitted its quarterly report for the period ended June 30, 2024 on a Form 10-Q filed with the SEC, affirming the previously reported financial results. The quarterly report further stated the following regarding the Company's Evaluation of Disclosure Controls and Procedures, in relevant part:

**Item 4. Controls and Procedures**

**Evaluation of Disclosure Controls and Procedures**

Under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, we evaluated the effectiveness of our disclosure controls and procedures pursuant to Rule 13a-15(e) and 15(d)-15(e) under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), as of the end of the period covered by this Quarterly Report on Form 10-Q. Our disclosure controls and procedures are designed to ensure that information required to be disclosed in the reports we file or submit under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms, and that such information is accumulated and communicated to our management, including the Chief Executive Officer and the Chief Financial Officer, to allow timely decisions regarding required disclosures. Any controls and procedures, no matter how well designed and operated, can provide only reasonable assurance of achieving the desired control objective, and management necessarily applies its judgment in evaluating the cost-benefit relationship of possible controls and procedures. ***Based on that evaluation, our Chief Executive Officer and Chief Financial Officer have concluded that our disclosure controls and procedures were effective at a reasonable assurance level as of June 30, 2024.***

**Changes in Internal Control over Financial Reporting**

There have been no changes in our internal control over financial reporting, as such term is defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act, during the three months ended June 30, 2024 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

19.    On November 7, 2024, Maravai issued a press release announcing its financial results for the third quarter of 2024, which stated in relevant part:

**Financial Highlights:**

• ***Quarterly revenue of $65.2 million, Net loss of $(176.0) million (including a goodwill impairment of $154.2 million),*** and Adjusted EBITDA of $12.7 million; and

• Updated revenue guidance for the full year 2024 to be in the range of $255.0 million to $265.0 million.

*          *          *

**Third Quarter 2024 Financial Results**

***Revenue for the third quarter was $65.2 million, representing a 2.5% decrease over the same period in the prior year and was driven by the following:***

• Nucleic Acid Production revenue was $49.9 million for the third quarter, representing a 2.5% decrease year-over-year. The revenue decrease was primarily driven by lower demand for research and discovery products.

• Biologics Safety Testing revenue was $15.3 million for the third quarter, representing a 2.5% decrease year-over-year, primarily due to lower demand in the bioprocessing market.

Net loss and Adjusted EBITDA (non-GAAP) were $(176.0) million and $12.7 million, respectively, for the third quarter of 2024, compared to net loss and Adjusted EBITDA (non-GAAP) of $(15.1) million and $11.9 million, respectively, for the third quarter of 2023.

20.     On November 12, 2024, the Company submitted its quarterly report for the period ended September 30, 2024 on a Form 10-Q filed with the SEC, affirming the previously reported financial results (the "3Q24 10-Q"). It stated that the Company performed an impairment test and concluded that the "TriLink reporting unit had a carrying value that exceeded its estimated fair value," leading to a goodwill impairment of $154.2 million. The report stated, in relevant part:

> ***In connection with preparing its financial statements for the quarter ended September 30, 2024, the Company tested its reporting units for potential goodwill impairment in response to impairment indicators identified during the Company's forecasting process.*** During the quarter ended September 30, 2024, the Company revised its long-term forecast to reflect lower projected near term revenues due to lower demand in research and discovery products within our Nucleic Acid Production business. This revision also considered the slower than expected transition to new mRNA clinical trials as customers prioritize existing programs and more conservatively invest in new programs as the results of continued macroeconomic pressures. The Company performed a quantitative goodwill impairment test on each of its four reporting units.

The Company performed the impairment test using a combination of the income and the market approach to determine whether the fair value of each reporting unit was less than its carrying value. The income approach utilizes a discounted cash flow model with inputs developed using both internal and market-based data, while the market approach utilizes comparable company information. The significant assumptions in the discounted cash flow models vary amongst, and are specific to, each reporting unit and include, but are not limited to, discount rates, revenue growth rate assumptions (including terminal growth rates) and operating margin percentages. Discount rates were determined using a weighted average cost of capital specific to each reporting unit and other market and industry data. For TriLink, the selected discount rate was 10.5%. These assumptions were developed in light of current market conditions and future expectations which include, but were not limited to, new product and service developments, impact of competition and future economic conditions. These estimates and assumptions represent a Level 3 measurement because they are supported by little or no market activity and reflect our own assumptions in measuring fair value. Based on its interim quantitative assessment, the Company concluded that the TriLink reporting unit had a carrying value that exceeded its estimated fair value. As a result, the Company recorded goodwill impairment of $154.2 million on the condensed consolidated statements of operations, which was the entire goodwill balance at the reporting unit. ***No impairment was recorded for the Company's remaining three reporting units, as each of their fair values exceeded their respective carrying values.***

21.     The 3Q24 10-Q further stated the following regarding the Company's Evaluation of Disclosure Controls and Procedures, in relevant part:

**Item 4. Controls and Procedures**

**Evaluation of Disclosure Controls and Procedures**

Under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, we evaluated the effectiveness of our disclosure controls and procedures pursuant to Rule 13a-15(e) and 15(d)-15(e) under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), as of the end of the period covered by this Quarterly Report on Form 10-Q. Our disclosure controls and procedures are designed to ensure that information required to be disclosed in the reports we file or submit under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms, and that such information is accumulated and communicated to our management, including the Chief Executive Officer and the Chief Financial Officer, to allow timely decisions regarding required disclosures. Any controls and procedures, no matter how well designed and operated, can provide only reasonable assurance of achieving the desired control objective, and management necessarily applies its judgment in evaluating the cost-benefit relationship of possible controls and procedures. ***Based on that evaluation, our Chief Executive Officer and Chief Financial Officer have concluded that our disclosure***

*controls and procedures were effective at a reasonable assurance level as of September 30, 2024.*

**Changes in Internal Control over Financial Reporting**

There have been no changes in our internal control over financial reporting, as such term is defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act, during the three months ended September 30, 2024 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

22.   On January 8, 2024, Maravai issued a press release announcing certain preliminary financial results for the year ended December 31, 2024. The press release reported that "based on preliminary year-end results and subject to year-end closing adjustments, the Company expects to report total 2024 revenue near the mid-point of the previously announced guidance range of $255.0 million and $265.0 million."

23.   The above statements identified in ¶¶ 17-22 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors that: (1) Maravai lacked adequate internal controls over financial reporting related to revenue recognition; (2) as a result, the Company inaccurately recognized revenue on certain transactions during fiscal 2024; (3) its goodwill was overstated; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

24.   On February 25, 2025, before the market opened, Maravai issued a press release, postponing its fiscal 2024 earnings release and announcing it would delay filing its annual report on Form 10-K for the fiscal year ended December 31, 2024. Specifically, the press release stated, in relevant part:

Maravai LifeSciences Holdings, Inc. (Maravai) (NASDAQ: MRVI), a global provider of life science reagents and services to researchers and biotech innovators, today announced that it is postponing its previously announced earnings release and call scheduled for February 25, 2025. It also announced that it intends to file a Form 12b-25, Notification of Late Filing, with the U.S. Securities and Exchange Commission and will

delay the filing its annual report on Form 10-K for the fiscal year ended December 31, 2024 (the "2024 Form 10-K"). Maravai intends to hold its postponed earnings call and to file the 2024 Form 10-K as soon as practicable and on or before March 18, 2025, prior to the expiration of the automatic extension of fifteen calendar days from the original 2024 Form 10-K due date of March 3, 2025.

Maravai requires additional time to complete its year-end financial close process for reasons related primarily to the following items. First, Maravai requires additional time to complete its assessment of a potential non-cash impairment charge related to goodwill associated with its previous acquisition of Alphazyme LLC. Second, Maravai requires additional time to assess an error identified during the close process with respect to revenue recognition associated with a single shipment identified in year-end audit procedures that resulted in approximately $3.9 million in revenue being recorded in the final week of the second quarter of 2024 upon shipment when it should have been recorded in the first week of the third quarter of 2024 upon receipt by the customer. This revenue recognition error is not expected to impact full-year 2024 revenue, which Maravai still expects to be near the mid-point of the previously announced guidance range of $255.0 million and $265.0 million. Third, Maravai requires additional time to complete its assessment of the effectiveness of its disclosure controls and procedures and internal controls over financial reporting as of December 31, 2024, and any remediation, including with respect to remediation of a material weakness in its internal controls over revenue recognition identified by management.

25.    On this news, the Company's share price fell $0.87 or 21.70%, to close at $3.14 per share on February 25, 2025, on unusually heavy trading volume.

## **CLASS ACTION ALLEGATIONS**

26.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Maravai securities between August 7, 2024 and February 24, 2025, inclusive and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

27.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Maravai's shares actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at

this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Maravai shares were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by Maravai or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

28. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

29. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

30. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Maravai; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

31. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it

impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

32.    The market for Maravai's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Maravai's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Maravai's securities relying upon the integrity of the market price of the Company's securities and market information relating to Maravai, and have been damaged thereby.

33.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Maravai's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Maravai's business, operations, and prospects as alleged herein.

34.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Maravai's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's

securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

35.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

36.    During the Class Period, Plaintiff and the Class purchased Maravai's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

37.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Maravai, their control over, and/or receipt and/or modification of Maravai's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Maravai, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

38.    The market for Maravai's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Maravai's securities traded at artificially

inflated prices during the Class Period.  On August 16, 2024, the Company's share price closed at a Class Period high of $9.68 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Maravai's securities and market information relating to Maravai, and have been damaged thereby.

39.    During the Class Period, the artificial inflation of Maravai's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Maravai's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Maravai and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

40.    At all relevant times, the market for Maravai's securities was an efficient market for the following reasons, among others:

(a)    Maravai shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    As a regulated issuer, Maravai filed periodic public reports with the SEC and/or the NASDAQ;

(c)    Maravai regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services

and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)    Maravai was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

41.    As a result of the foregoing, the market for Maravai's securities promptly digested current information regarding Maravai from all publicly available sources and reflected such information in Maravai's share price. Under these circumstances, all purchasers of Maravai's securities during the Class Period suffered similar injury through their purchase of Maravai's securities at artificially inflated prices and a presumption of reliance applies.

42.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## <u>NO SAFE HARBOR</u>

43.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the

statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Maravai who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

44.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

45.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Maravai's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

46.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of

the Company's securities in an effort to maintain artificially high market prices for Maravai's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

47.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Maravai's financial well-being and prospects, as specified herein.

48.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Maravai's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Maravai and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

49.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other

members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

50.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Maravai's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

51.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Maravai's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired

Maravai's securities during the Class Period at artificially high prices and were damaged thereby.

52.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Maravai was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Maravai securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

53.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

54.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

55.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

56.    Individual Defendants acted as controlling persons of Maravai within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company,

including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57.    In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

58.    As set forth above, Maravai and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

1

## <u>JURY TRIAL DEMANDED</u>

2

    Plaintiff hereby demands a trial by jury.

3

4    DATED:  March 3, 2025

         **GLANCY PRONGAY & MURRAY LLP**

5

         By:  */s/ Pavithra Rajesh*

6

         Robert V. Prongay
         Pavithra Rajesh

7

         1925 Century Park East, Suite 2100
         Los Angeles, California 90067

8

         Telephone:  (310) 201-9150

9

         Facsimile:  (310) 201-9160
         rprongay@glancylaw.com

10

         prajesh@glancylaw.com

11

12

         **THE LAW OFFICES OF FRANK R. CRUZ**
         Frank R. Cruz

13

         2121 Avenue of the Stars, Suite 800
         Century City, CA 90067

14

         Telephone: (310) 914-5007

15

16

         *Attorneys for Plaintiff Shaji Nelson*

17

18

19

20

21

22

23

24

25

26

27

28

## SWORN CERTIFICATION OF PLAINTIFF

## MARAVAI LIFESCIENCES HOLDINGS, INC. SECURITIES LITIGATION

I, Shaji Nelson, certify that:

1.  I have reviewed the Complaint, adopt its allegations, and authorize the filing of a Lead Plaintiff motion on my behalf.

2.  I did not purchase the Maravai LifeSciences Holdings, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions in Maravai LifeSciences Holdings, Inc. securities during the Class Period set forth in the Complaint are as follows:

    (See attached transactions)

5.  I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

3/3/2025
_____
Date

*Shaji Nelson*
_____
Shaji Nelson

**Shaji Nelson's Transactions in Maravai LifeSciences Holdings, Inc. (MRVI)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 1/10/2025 | Bought | 1,000 | $4.8700 |
| 1/11/2025 | Sold | -1,000 | $4.8700 |
| 1/29/2025 | Bought | 1,000 | $5.5900 |
| 1/29/2025 | Bought | 1,000 | $5.5686 |
| 1/29/2025 | Sold | -1,000 | $5.7200 |
| 1/30/2025 | Bought | 2,000 | $4.9694 |
| 1/30/2025 | Bought | 1,410 | $4.9794 |
| 2/14/2025 | Bought | 3,000 | $4.0670 |
| 2/14/2025 | Bought | 910 | $4.0892 |